**WINTERS NATIONAL BANK & TRUST COMPANY OF DAYTON, Plaintiff,**

v.

**SCHEAR GROUP, et al., Defendants.**

**In the Matter of The SCHEAR REALTY & INVESTMENT CO., INC., Debtor.**

Adv. No. 3–82–0491.

Bankruptcy No. 3–82–01843.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 27, 1982.

Thomas C. Scherer, Indianapolis, Ind., John M. Cloud, Dayton, Ohio, for debtor.

Raymond Cunningham, Columbus, Ohio, Alan Schaeffer, Dayton, Ohio, Kenneth Mitchell, C. Comm., Columbus, Ohio, Sigmund J. Beck, Indianapolis, Ind., Jack Pigman, Columbus, Ohio, Thomas Noland, Dayton, Ohio, J. Ralston Werum, Columbus, Ohio, Edward H. Siddens, Dayton, Ohio, William P. Smith, Dayton, Ohio.

### SUPPLEMENTAL DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

This matter is before the Court as one of innumerable other cases wherein jurisdic-

tion has been exercised pursuant and conformably to the judgment stay entered by the Supreme Court of the United States in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 6 C.B.C. 785, 9 B.C.D. 67 (1982) (hereinafter "Northern"), (stayed until December 24, 1982).

This case involves the exercise of jurisdiction in a foreclosure suit brought under state law to enforce private contractual obligations among litigants, by operation of law residents of the same state (Ohio), and removed to this Court pursuant to jurisdiction vested in the Bankruptcy Courts conformably to 28 U.S.C. § 1471, as extended by the stay of the Supreme Court until December 24, 1982.

On 15 December 1982 this Court entered the following order,

This matter is before the Court upon Motion to Remand filed on 4 October 1982 (along with a supplemental memorandum) by the Winters National Bank & Trust Company of Dayton (hereinafter WNB). The Court considered the Motion at a conference held on 2 November 1982, at which time the parties agreed that the Court could render decision on the Motion based upon the record without the necessity of further hearing. Debtor subsequently filed a Memorandum in Opposition to the Motion to Remand.

The instant Complaint, filed by WNB in the Montgomery County (Ohio) Common Pleas Court on 21 June 1982 names a number of parties as defendants, including Debtor. The Complaint essentially requests foreclosure on several properties (some of which appear to belong to Debtor) based upon several notes (one of which appears to be an obligation of Debtor).

WNB argues in favor of remand on two grounds: first, lack of jurisdiction in light of the decision by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* [—— U.S. ——], 102 U.S. 2858 [73 L.Ed.2d 598] (1982); and second, "equitable considerations" as elaborated in this Court's opinion in *T.L.C. Inc. v. Ebrights Refrigeration Equipment, Inc.,* 13 B.R. 546, 4 C.B.C.2d 1543 (1981). Basically, WNB contends that this Court is an inappropriate forum because the instant Complaint raises largely state law questions determative of the rights of non-bankrupt litigants.

Debtor responds that the portions of the Complaint which have not been settled and are in dispute directly involve or affect Debtor or Debtor's estate. Debtor notes that this matter is closely related to two pending adversary proceedings involving the same parties and properties in the context of creditor requests for relief from the automatic stay of 11 U.S.C. § 362. See, Adversarial Proceedings No. 3–82–0421 and No. 3–82–0460.

It is the determination of this Court that it should continue to exercise jurisdiction under 28 U.S.C. § 1471, as elaborated and qualified in this Court's opinion in *Benchic v. Century Entertainment Corp.* [21 B.R. 160], Case No. 3–81–04024, Adv. No. 3–81–0242 and 3–81–0516 (December 7, 1982).

It is the further determination of the Court, however, that it would be premature to issue a final resolution of the remand question prior to the Court's determination of the related requests for relief from the automatic stay in Adversarial Proceedings No. 3–82–0421 and No. 3–82–0460, and also prior to the filing of a proposed Plan of Reorganization, as both are necessary to determine the extent of the connection of Debtor's estate, and administration thereof, to the instant Complaint.

IT IS THEREFORE ORDERED that the ultimate resolution of the instant Motion to Remand is RESERVED, until further order of the Court conformably to Interim Bankruptcy Rule of Procedure 7004(j).

The matter is now before the Court upon the following Orders entered on December 21, 1982 by the Judicial Council of the Sixth Circuit and by The United States District Court for the Southern District of Ohio

(hereinafter the "Orders") on December 23, 1982, which read as follows:

## "JUDICIAL COUNCIL OF THE SIXTH CIRCUIT

### "ORDER

"Acting pursuant to the authority vested in the Judicial Council by 28 U.S.C. § 332(d), the Judicial Council of the Sixth Circuit concludes that the uniform effective and expeditious administration of justice within this Circuit requires that the attached rule for the administration of the bankruptcy system in this Circuit be adopted by the District Courts of this Circuit pursuant to 11 U.S.C. § 105.

"It therefore is ordered that each District Court of this Circuit adopt the attached rule to become effective December 25, 1982 if the Congress fails to enact remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. vs. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598], (1982), and if the Supreme Court fails to extend the stay of its mandate in that case.

> For the Council:
> [signed]
> George Edwards, Chief Judge
> Sixth Circuit

Date: <u>December 21, 1982</u>

---

## "UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

### "RULE

"(a) Emergency Resolution

"The purpose of this rule is to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs.

"The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

"Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

"(b) Filing of bankruptcy papers

"The bankruptcy court constituted by § 404 of Public Law 95–598 shall continue to be known as the United States Bankruptcy Court in this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

"(c) Reference to Bankruptcy Judges

"(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

"(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the

entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the Court's usual system for assigning civil cases.

"(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

"(d) Powers of Bankruptcy Judges

"(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy Judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

"(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

"(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estates; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

"(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

"(e) District Court Review

"(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e) 2A and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.

"(2)(A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge of any notice of appeal of application for leave to appeal was filed; and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

"(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

"(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (e)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

"(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order or judgment of the district judge after review.

"(f) Local Rules

"In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

"(g) Bankruptcy Rules and Title IV of Public Law 95–598

"Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982).

"(h) Effective Date and Pending Cases

"This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.*"

I

The opinion now expressed herein in summary fashion will be the basic *ratio decidendi* in the innumerable pending cases and adversarial proceedings now pending in this Court as guidance to the large number of attorneys whose clients' causes have been posited into a jurisdictional vacuum.

The "Orders" obviously represent a noble and Herculian attempt to provide at least a provisional answer to the plight of litigants involved in Bankruptcy Court cases involving the personal and property rights of Debtors in over 700,000 pending cases na-

---

* These orders became effective in this District by Order issued by the Chief Judge of the United States District Court for the Southern District of Ohio. The Order reads as follows:

IN RE: OPERATION OF THE BANKRUPTCY COURT SYSTEM

ORDER

Pursuant to the Order of the Judicial Council of the Sixth Circuit dated December 21, 1982, the United States District Court for the Southern District of Ohio hereby adopts the attached rule for the administration of the bankruptcy system. Such rule will become effective December 25, 1982 if the Congress of the United States fails to enact remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), and if the Supreme Court fails to extend the stay of its mandate in that case.

IT IS SO ORDERED.

[signed]
Carl B. Rubin, Chief Judge
United States District Court

tionwide (18,217 cases filed during fiscal year 1982 in this District); and, the personal and property rights of affected parties nationwide reaching into billions of dollars in jeopardy financially, as well as the life blood of thousands of employers and employees, vital to national well being.

Dedicated and professionally capable bankruptcy judges, probably more than any other group, have been aware of the jurisdictional problems which have jeopardized such socio-economic interests for decades (at least since 1965), and long prior to the enactment by the Congress of the Bankruptcy Reform Act of 1978 (hereinafter the "Code") designed to mitigate the inordinate costs and resources wasted because of archaic methods of judicial administration in bankruptcy cases which have historically involved the "... broadest spectrum of other laws." **

Since this Code jurisdiction, as found to be unconstitutional, cannot now be exercised in the Bankruptcy Courts it becomes necessary to assist the litigants in reaching a forum to resolve their legal controversies. The Supreme Court provided the Congress with the opportunity to resolve by correc-

tive legislation this constitutional problem either within the Bankruptcy Court structure or by ulterior methods in the federal or state courts. We are constrained to conclude now that the only existing forums available are the state courts, though fully cognizant of the exhaustive research and legislative efforts which lead the Congress to confront historic anachronisms in judicial administration in developing the 1978 Bankruptcy Code. This massive effort was exerted in the legislative process for at least a decade of acknowledged dire need.

§ 22 of the Bankruptcy Act (11 U.S.C. § 45) as to referring cases to Referees, § 23 (11 U.S.C. § 46) as to the jurisdiction of United States and State Courts; § 38 (11 U.S.C. § 66) as to jurisdiction of Referees; and § 39 (11 U.S.C. § 67) as to duties of Referees, were all repealed by Pub.L. 95–598, 92 Stat. 2683 §§ 401, 403, which repealed the Bankruptcy Act *in toto,* excepting certain saving provisions as to cases then pending and the status of United States Bankruptcy Judges then serving. Upon such repeal of the Bankruptcy Act, §§ 301, 302, 303 and 304 of the Bankruptcy Code superseded the applicable Bankruptcy

---

** "The present purposes of the Bankruptcy Act are twofold; either to rehabilitate financially a distressed debtor or to assemble and liquidate his assets for distribution to creditors.

In either kind of proceeding, the nature of bankruptcy is to sort out all of the debtor's legal relationships with others, and to apply the principles and rules of the bankruptcy laws to those relationships. Bankruptcy is mainly a procedural device, prescribing the method of accomplishing rehabilitation or liquidation, but generally leaving undisturbed legal relationships that existed before bankruptcy. To this end, the Bankruptcy Act incorporates State and general Federal Law in many important areas. The bankruptcy judge must apply to the many diverse and frequently complex fact patterns that arise in the typical bankruptcy case this general body of law, as well as apply the bankruptcy law:

'The variety of legal issues encountered is almost endless. The Bankruptcy Act requires application of the broadest spectrum of other laws governing, for example, taxes, torts, negotiable instruments, contracts, spendthrift and other trusts, mortgages, conveyances, landlord and tenant relationships, partnerships, mining, oil and gas extraction, domestic relations, labor relations, insurance,

Securities and Exchange Commission statutes, regulations and decisional law * * *

[in one recent bankruptcy case, *In re Fotochrome,*] the bankruptcy judge was called upon to decide an international conflict of law question involving sections of the Japanese Civil Code; to construe certain treaties of commerce and navigation, and to give effect to a postpetition award by the International Arbitration Tribunal."

Bankruptcy courts are frequently confronted with constitutional issues. Much of the decisional law surrounding the requirement of the fifth amendment with respect to property rights derives from bankruptcy cases. The courts have also considered issues such as State sovereignty and federalism; first amendment rights; the scope of the contracts clause; the jurisdiction and powers of Federal Courts; the legitimacy of congressional grants of jurisdiction, to name only a few that have arisen. The issues resolved at the trial level in the bankruptcy court system are myriad. With the proposed expansion of jurisdiction granted under H.R. 8200 the scope of issues will surely grow." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 10 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; 9 Bkr.L.Ed. §§ 82:2, p. 18. [citations omitted]

Rules as adopted by the United States Supreme Court in 1973, to govern references by District Judges and the exercise of jurisdiction by Bankruptcy Judges.

Furthermore, the plurality opinion in *Northern Pipeline* has even placed into question the constitutionality of pre-1978 procedures repealed by the 1978 Code because "... those particular adjunct functions, which represent the culmination of years of gradual expansion of the power and authority of the bankruptcy referee [citation omitted], have never been explicitly endorsed by this Court. ..." 102 S.Ct. at page 2876, note 31, 9 B.C.D. at page 81, note 31. The Bankruptcy Court exclusive jurisdiction derived from 28 U.S.C. § 1471(e) "over property of the debtor" was not, however, explicitly found unconstitutional in *Northern Pipeline.*

The jurisdictional fiction as attempted by the Orders *instanter* under consideration purporting to legislate delegated jurisdiction to the Bankruptcy Courts from the District Courts can rise no higher in effect than the Congressional legislation found unconstitutional. It is noteworthy that 28 U.S.C. § 1651(a) and 11 U.S.C. § 105 (all Writs Statute) supply jurisdiction to federal courts to issue only "... all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law." [emphasis added].

All Courts of the United States are courts of limited jurisdiction. The federal district courts have only the powers granted to them by the Congress. Article III, Section 1 of the Constitution creates the Supreme Court of the United States, but delegates to Congress the constitutional power to create all inferior federal courts and thereby to establish their jurisdiction (within, of course, limitations on this power such as the Sixth, Seventh and Eleventh Amendments).

The District Courts have traditionally been the basic Article III courts of first instance in the United States judicial system and have been invested with jurisdiction over federal crimes, admiralty, and bankruptcy, and jurisdiction based upon diversity of citizenship or a "federal question." See 28 U.S.C. §§ 1331, 1332–34.

The jurisdiction of the District Courts in bankruptcy is now derived from and limited by 28 U.S.C. § 1334. Jurisdiction as courts of bankruptcy under § 2(a) of the repealed Bankruptcy Act (11 U.S.C. § 11) cannot fill the deplorable void now confronting litigants—(because repealed by Public Law 95–598). Although the question of jurisdiction over bankruptcy related litigation conferred upon Bankruptcy Judges as "Article I" judges is virtually impossible to resolve from *Northern Pipeline,* there can be little doubt that no Article III jurisdiction was conferred by 28 U.S.C. § 1471 on District Judges. The legislative device of constituting an independent Bankruptcy Court as "adjuncts" of the District Court was found to be unconstitutional and a "facade" not vesting any real jurisdiction in the District Court. See *Northern Pipeline,* 102 S.Ct. at pp. 2873, 2879, 9 B.C.D. at pp. 78, 84. 28 U.S.C. § 1471 very clearly precluded any jurisdictional grant to District Courts as a matter of obvious legislative intent. In so finding, the plurality in *Northern Pipeline* predicated its conclusion on the literal terms of the statute, that all of the jurisdictional reference to the District Courts was automatically and conclusively conferred on the new, independent Bankruptcy Courts.

As previously held by this Court, the Bankruptcy Court as constituted, has no legislated jurisdiction or authorization to transfer to a District Court a proceeding, whether or not the Bankruptcy Court has jurisdiction. *Benchic, et al. v. Century Entertainment Corp., et al. (In re Century Entertainment Corp.),* 20 B.R. 126, 9 B.C.D. 206, 66 C.B.C.2d 753, (1982). Even if it is assumed *arguendo* that a District Court might have the usual Federal question jurisdiction, or diversity, or other jurisdiction, transfer is not possible by a Bankruptcy Court that is without jurisdiction. This is more than a venue problem. Conversely, in the absence of legislative authorization, the District Courts cannot confer such jurisdiction either on the Bankruptcy Courts or any other court. Likewise, the Circuit Judicial Council cannot confer jurisdiction on the District Courts as a legislative device.

Even though the Supreme Court has apparently declared 241(a) of the 1978 Bankruptcy Reform Act (Public Law 95–598, November 6, 1978, 92 Stat. 2549 enacting 28 U.S.C. § 1471) unconstitutional by the plurality opinion, if it is assumed for the sake of expediency that jurisdiction still lies in Article I Bankruptcy Courts over disputes involving parties who have constructively subjected themselves to bankruptcy court jurisdiction in causes sounding in contract or other state statutory and common law types of disputes, such jurisdiction is not involved *instanter* because of the very nature of the state foreclosure suit. Hence, even the fiction of District Court jurisdiction does not provide a cause of action the District Court can resolve as a federal question or diversity case. The District Court was vested by the Bankruptcy Code with only appellate functions and then only if the litigants chose not to appeal directly to the Circuit Court of Appeals (or a possible Bankruptcy Judge Appellate Panel to be constituted by the Court of Appeals to avoid the expenses of double-step and triple-step appeals). See 28 U.S.C. Chapter 6, "Bankruptcy Courts" §§ 151–160, which sections further emphasize the Supreme Court's conclusion that only the Bankruptcy Court was vested with jurisdiction under 28 U.S.C. § 1471.

## II

There is a more serious aspect, however, from the exercise of fictional jurisdiction by both the Bankruptcy Courts and the District Courts. As between the litigants the judicial process, including appellate court scrutiny of decisions of trial courts, provides a crucible to rationalize the exercise of jurisdiction and the deprivation of rights by means which do not bear constitutional muster.

The Bankruptcy Judges and the District Judges should not obviate the very dire possibility of civil liability of judges themselves to the litigants. Despite the general rule that a judge is not civilly liable for acts done in the exercise of the judicial function, the Supreme Court has consistently held that judges of courts of limited jurisdiction (as are all federal courts) are not immune from civil liability where there is no jurisdiction and the lack of jurisdiction over the subject matter is known to the judge. The *Northern Pipeline* decision, no matter how interpreted, puts Bankruptcy Judges and District Judges on notice that 28 U.S.C. § 1471 is unconstitutional. Assuming *arguendo* that there may be judicial immunity, even for acts in excess of jurisdiction in the absence of bad faith or malice, a reading of *Northern Pipeline* may invoke a law suit against a Bankruptcy Judge or District Judge on the basis that there is not even colorable jurisdiction in a particular case. See 46 Am.Jur.2d, Judges §§ 72 et seq.; "Supreme Court Views As To Civil Liability of Judges," 55 L.Ed.2d 850.

Before the decision in *Northern Pipeline* judicial immunity was no doubt complete protection until the jurisdiction statute was declared unconstitutional. Now this specter has been raised and litigants might well demand obeisance to the Constitution and the Supreme Court decision.[1] The very uncertainty of jurisdiction and of civil liability dictates the implementation of the spirit of provisions of 11 U.S.C. § 305 which reads, as follows:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) *the interests of creditors and the debtor would be better served by such dismissal or suspension;* or

(2)(A) there is pending a foreign proceeding; and

---

1. All of the Supreme Court opinions, those of the plurality, those in dissent, and those concurring, clearly acknowledge and, in effect, emphasize that the creation of federal courts, (whether "Article I" or "Article III" Courts), is a legislative function. Whatever the deficiencies, in any view, existing in the 1978 Bankruptcy Reform Act and 28 U.S.C. § 1471, found to be unconstitutional, must be remedied by the Congress as a legislative matter under Article I of the Constitution and not by the Courts under Article III. The separation of powers doctrine, so cherished in our Constitutional form of government, works both directions.

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

(b) A foreign representative may seek dismissal of suspension under subsection (a)(2) of this section.

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or *a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.* [emphasis added].

Weighed against the question of jurisdiction and the possibility, even if remote, of civil liability of a Bankruptcy Judge or District Judge, is the fact that the state Common Pleas Courts have unquestioned general jurisdiction. The potential for interference with the purpose of the Chapter 11 Reorganization by state courts and the desirability and means of conferring federal court jurisdiction in particular bankruptcy cases are legislative matters not judicial, even though hundreds of thousands of individual debtors, business entities, creditors and other affected parties may suffer disastrous consequences.

ORDERED, ADJUDGED AND DECREED that neither the Bankruptcy Courts nor the District Courts are vested with jurisdiction over the litigation of state law causes of action involving nondebtors in a bankruptcy court unless conferred by a jurisdictional statute enacted by the Congress to supplant 28 U.S.C. § 1471 or the jurisdiction conferred upon the District Court by other statutes.

ORDERED, that the foreclosure suit filed on June 25, 1982, by the Winters National Bank and Trust Company of Dayton vs. Schear Group, Inc., et al., under Case No. 82–1820, and removed to this Court on July 29, 1982, should be remanded to the Common Pleas Court of Montgomery County, Ohio, for disposition, as the only court having jurisdiction.