In re Ralph A. HERRERA, Individually and dba Construction Enterprises Excavating, Debtor.

Ralph A. HERRERA, Individually and dba Construction Enterprises Excavating, Plaintiffs,

v.

WEAVER CONSTRUCTION COMPANY, a Colorado corporation; Fireman's Fund Insurance Company, a California corporation; and the Regional Transportation District, a Governmental Agency created by statutes of the State of Colorado, Defendants.

Bankruptcy No. 81 B 5867 J.
Adv. No. 81 M 2788.

United States Bankruptcy Court,
D. Colorado.

Feb. 3, 1983.

Albert B. Wolf, Wolf & Slatkin, Denver, Colo., for plaintiffs.

Hugh J. McClearn, Conover, McClearn, Heppenstall & Kearns, Denver, Colo., for Weaver Const. Co. and Fireman's Fund Ins. Co.

Alan E. Richman, Denver, Colo., for The Regional Transp. Dist.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

Two separate motions have been presented to this Court for determination. The first is a motion for entry of judgment on an arbitration award obtained pursuant to the provisions of a contract between Herrera and Weaver, and pursuant to the provisions of 1973 C.R.S. 13–22–101, et seq. as amended. The second is a motion for injunctive relief, wherein I have been asked to enjoin the debtor from proceeding further in the State court in aid of execution of a judgment entered in that court on the same arbitration award and to further enjoin the debtor from continuing garnishment and other collection proceedings, pursuant to C.R.C.P. 109(e). Alternatively, the defendant Weaver has asked that I remand the arbitration award to the arbitration panel for clarification of its award as respects punitive damages and any possible issues regarding defendant, R.T.D. Both parties have suggested that we endeavor to proceed on remaining matters in a court of competent jurisdiction. The issues which are the subject of this adversary proceeding and which were addressed in the arbitration arise under state law.

Defendant Weaver argues that this court has jurisdiction in spite of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and Congressional inaction in response thereto, by virtue of General Procedure Order No. 1983–1 issued by the United States District Court for the District of Colorado. The debtor-plaintiff (Herrera) urges that "it appears that this court may not have jurisdiction over the adversary proceeding between Debtor-Plaintiff, Ralph A. Herrera, Weaver and the other defendants which is the subject of defendant Weaver's motion."

I agree with Herrera, but, for reasons later set forth herein, feel that this matter requires the district court to review this proposed order for such consideration as it deems appropriate.

A recitation of the factual background and its relationship to the jurisdictional quagmire in which the Bankruptcy Courts have been placed will be helpful to an understanding of this suggested order.

The debtor-plaintiff (Herrera) filed a Petition in this Court under Chapter 13 on December 16, 1981. This was later converted to a Chapter 11 matter on August 25, 1982. Prior to filing for the adjustment under Chapter 13, Herrera filed, on or about June 25, 1981, a civil action in the State court of Colorado. That action was filed against Weaver Construction Company, Fireman's Fund Insurance Company as its bonding surety, and against the Regional Transportation District (R.T.D.). It was alleged that R.T.D. was a party to a construction contract with defendant Weaver, as the General Contractor, to construct a shopping mall. Herrera was employed as an excavating sub-contractor. Herrera asserted claims of fraud in the inception of the contract, breach of contract, *quantum meruit* and outrageous conduct. The contract also contained an arbitration clause. The State litigation was then removed to this court by virtue of *Herrera's* Petition for Removal filed herein on December 16, 1981. Subsequently, on March 3, 1982, this court directed that the litigation be remanded to

arbitration. The arbitration was concluded and an award made on December 16, 1982. A copy of that AWARD OF ARBITRATORS was filed in this court on January 10, 1983. In that arbitration proceeding, Herrera was awarded $132,000.00 together with certain administrative fees and expenses. Weaver then filed a MOTION FOR ENTRY OF JUDGMENT ON ARBITRATION AWARD in this court on January 12, 1983. Pursuant to the Uniform Arbitration Act of 1975, C.R.S.1973, 13–22–201, et seq., Herrera has ninety days from receipt of the award to enter any objection, at which time the court would be in a position to vacate, confirm, modify or correct the award.

In the meantime, on December 17, 1982, one day after the arbitration award was entered but before it was filed in this court, Herrera commenced a civil action in the State district court and obtained an *ex parte* judgment confirming the arbitration award in that court. According to Herrera, that action was taken pursuant to C.R.C.P. 109(e), Rule 47 of the Construction Industry Arbitration Rules of the American Arbitration Association and pursuant to Herrera's interpretation of the decision of the Colorado Supreme Court in *Columbine Valley Construction Co. v. Roaring Forks School District,* 626 P.2d 686 (Colo.1981). Additionally, Herrera allegedly made demand upon Weaver, upon its bonding company, Fireman's Fund Insurance Company, and upon defendant Regional Transportation District for payment of the arbitration award. Pursuant to that demand Herrera processed garnishments against the Colorado National Bank, University National Bank and the owners of various projects on which Weaver was working. The stated reason given by Herrera for going back to the State court was that he wanted to avail himself of the provisions of C.R.C.P. 109(e) and he was concerned that since Congress had failed to act in response to *Northern Pipeline v. Marathon Pipe Line, supra,* this court had no further jurisdiction in the matter.

It is undisputed between the parties that Weaver did make a tender of full payment to Herrera, but this tendered payment was predicated on a full release to Weaver, Fireman's Fund and R.T.D. Herrera disputes that Weaver is entitled to a release as to R.T.D., whom Weaver has apparently indemnified.

Weaver then filed its motion in this court on January 18, 1983, seeking to enjoin Herrera from continuing to pursue his state court remedies.

This Court's jurisdiction to enter any orders relating to these various State law claims is now before the Court.

The Supreme Court of the United States, on June 28, 1982, declared that the broad grant of jurisdiction to Bankruptcy Courts as contained in Section 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471 (1976 ed. Supp. III), violates Article III of the Constitution. *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). After entering two stays to afford Congress an opportunity to enact legislation to prevent a jurisdictional lapse, the Congress has failed to respond. The last stay expired on December 24, 1982.

Since the entry of the Supreme Court's decision in *Northern Pipeline, supra,* judicial lobbying of Congress and the Executive has become so pervasive and perverse as to make objective analysis of the present status of bankruptcy courts extremely difficult. In the meantime, those persons who labor under the misfortune of having to appear in the bankruptcy courts throughout the nation are rapidly becoming the losers, as more controversy and uncertainty surrounds the Code and the courts charged with the responsibility of administering it. Nevertheless, the following is an attempt to analyze and explain the decision reached herein today.

Section 241(a) of the Bankruptcy Reform Act of 1978 contains twelve sections to be inserted in Title 28 of the United States Code, under the heading "CHAPTER 90— DISTRICT COURTS AND BANKRUPTCY COURTS." The first such section, § 1471, is the jurisdictional provision. This is the portion of § 241(a) found to be unconstitu-

tional as a result of its broad grant of jurisdiction to bankruptcy courts. As stated by Justice Brennan in the introductory paragraph to the decision:

"The question presented is whether the assignment by Congress to bankruptcy judges of the jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471 (1976 ed. Supp. III), violates Art. III of the Constitution." *Northern Pipeline Construction Co. v. Marathon Pipe Line Company, supra,* 102 S.Ct. at page 2867.

Section 1471 contains five subsections relating to jurisdiction. The first reflects that original and exclusive jurisdiction of all cases under Title 11 shall be in the district courts. It is similar to 28 U.S.C. § 1334. It says nothing about the bankruptcy courts.

The second subsection, Sec. 1471(b), provides for original jurisdiction of all civil proceedings arising under Title 11 or *arising in or related to* cases under Title 11 to be placed in district courts. Such jurisdiction is simply not exclusive if Congress has placed exclusive jurisdiction elsewhere. Thus, where the bankruptcy court possesses exclusive jurisdiction under subsection (e) over property of the debtor under Title 11, the district court still has its original (but not exclusive) jurisdiction.

Subsection 3, Sec. 1471(c), then directs that the bankruptcy court shall exercise all jurisdiction conferred by this section (§ 1471) on the district courts. Thus, it grants the same powers of jurisdiction to the bankruptcy courts as it does to the district courts, not only in bankruptcy matters, but also in civil proceedings arising in or related to cases under Title 11.

Next, Sec. 1471(d), provides for abstention by a district court *or* a bankruptcy court, in the interests of justice, in a proceeding under, arising in or related to a case under Title 11.

Finally, subsection (e) of Sec. 1471 then places exclusive jurisdiction of all property of a debtor under Title 11 with the bankruptcy court.

After a lengthy analysis and discussion of the historical background of the jurisdictional problem, Justice Brennan concluded "that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional, ..." *Northern Pipeline Co., supra,* 102 S.Ct. at page 2880. Justice Rehnquist, in concurring, agreed with the plurality "that this grant of authority is not readily severable from the remaining grant of authority to Bankruptcy Courts under § 241(a), ...", citing to n. 40 of the Brennan opinion. *Northern Pipeline Co., supra,* 102 S.Ct. at page 2882.

The jurisdictional grants of authority are all contained in § 1471. Thus, it appears that the remaining sections under Chapter 90 of Title 28 of the U.S.Code (§ 241(a)), are left intact.

Further, the Supreme Court did not declare § 241(a) to be unconstitutional as to "courts of bankruptcy", as described in § 404(a) of the Bankruptcy Reform Act of 1978. Nor did it declare any other portion of the Act to be unconstitutional. The "courts of bankruptcy" during the transition period, according to § 404, are those courts so described under § 1(10) of the old Bankruptcy Act, created under § 2(a) of that Act. These included United States District Courts.

It is also noted that original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy continues to be vested in the district courts. 28 U.S.C. § 1334. The district courts, of course, have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

Based upon the foregoing, it appears to this Court that the decision in *Northern Pipeline Construction Co., supra,* still leaves jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11 with the district courts.

However, with respect to bankruptcy courts, all jurisdiction is divested by virtue of *Northern Pipeline Construction Co., supra,* since a majority (6 to 3) found the objectionable sections of § 241(a), as con-

tained in § 1471, to be non-severable from the remaining grant of authority to bankruptcy courts.[1]

In finding jurisdiction to remain with the district courts, I am mindful of various opinions of scholarly judges to the contrary. *In re The Schear Realty and Investment Co., Inc.,* 25 B.R. 463, 9 B.C.D. 1210 (Bkrtcy. S.D.Ohio, Western Division 1982); *In re Track Records, Inc.,* 7 CBC 427 (Bkrtcy.N.D. Ga.1982), see, also, *In re Otero Mills, Inc.,* 21 B.R. 645 (Bkrtcy.N.M.1982). I am simply not in accord with their reasoning on this particular issue. Additionally, there is at least one decision in support of continued jurisdiction in the district court, *In re Northland Point Partners,* 26 B.R. 860 (D.C. E.D.Mich., Southern Division 1983). While I do not agree with the total analysis in that decision, I do follow it with respect to continued jurisdiction in the district courts.

Having concluded that the United States District Courts possess the necessary jurisdiction, but that bankruptcy courts do not, I move with trepidation to the next issue, which is a consideration of the General Procedure Order 1983–1 from the district court for the District of Colorado and its effectiveness in restoring what the Supreme Court and Congress (by inaction) have taken away.

Clearly, the bankruptcy courts are not independent, but operate as "adjuncts" of the district courts. 28 U.S.C. § 151. During the transition period, all cases commenced under title 11 of the United States Code are "referred" to the bankruptcy judges, in this adjunct capacity. 11 U.S.C. § 405(a). The Supreme Court has said that portion of any referral which grants authority to determine issues arising under state law is unconstitutional. *Northern Pipeline Co. v. Marathon Pipe Line, supra.* In so holding, the majority of the plurality noted that Congress has several different options available to it in determining how best to resolve the jurisdictional conflicts, but "... that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III in the way that will best effectuate the legislative purpose." *Northern Pipeline Co. v. Marathon Pipe Line, supra,* 102 S.Ct. at p. 2880, n. 40.

The Supreme Court then stayed the effect of its decision to allow Congress an opportunity to act. It didn't. When the U.S. Congress allowed the second stay to expire without adopting legislation to correct the jurisdictional issue, a Constitutional crisis of monumental proportions was presented. The Judicial Conference found it necessary to direct the Administrative Office of the United States Courts to provide each circuit with a "proposed" model rule to take effect in each judicial district pending Congressional action responding to the *Northern Pipeline* decision. The ostensible purpose of that rule was to supply a provisional method to attempt to permit the bankruptcy system to continue in operation in the bankruptcy courts until the jurisdictional lapse is resolved. Procedurally, the

---

1. Both Justice Brennan and Justice Rehnquist noted that the state-law contract claim against Marathon could not be determined by the bankruptcy court. Since jurisdiction over other matters was vested in the bankruptcy court pursuant to the same statutory grant of authority found to be unconstitutional, the court did not wish to prognosticate what Congress might wish to do with respect to such remaining jurisdiction in restructuring the bankruptcy laws. Thus, it determined the remaining grants of authority to be non-severable and struck the whole jurisdictional section. In n. 20 to the Brennan opinion, some suggested alternatives were discussed. Justice Burger offered another solution, but the decision left the matter for Congress to determine. The Court also discussed its prior approval of the use of administrative agencies, *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) and magistrates, *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) so long as such adjuncts were assigned only limited adjudicatory functions, with the "essential attributes of judicial power" remaining with the Art. III court. This, too, was left for Congress to consider. The various different types of adjudicatory functions inherent in administering the Code and the multitude of adversary matters encompassed within the category of claims "arising under" or "arising in or related to cases under title 11" make efficient administration of the Bankruptcy Code vastly different from those matters presided over by administrative agencies and magistrates.

rule operates as a "referral" system from the district court to the bankruptcy court, whereby the bankruptcy courts basically continue to preside over the same matters and controversies as they did prior to the *Northern Pipeline* decision, except that jury trials are removed from those proceedings referred to the bankruptcy courts. Additionally, provisions are offered for the district judge to sign the final judgment in proceedings "related" to cases under title 11, upon the submission by the bankruptcy judge of proposed findings and conclusions. This is, indeed, one of the options Congress might consider, as the Supreme Court has noted. But Congress hasn't acted.

General Procedure Order No. 1983–1, adopted in this district, is patterned after that model rule, with some revisions. Unfortunately, in the haste to offer this model rule, there appears to have been an incorrect analysis of some of the alleged sources of authority for such a rule. These authorities were then referenced in adopting General Procedure Order 1983–1.

In the first instance, it was suggested that authority for delegation by the district court to the bankruptcy court "is found in § 105 of the 1978 Act, which gives the *courts of bankruptcy* the power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title', ..." (emphasis added). Memo, Administrative Office of the United States Courts, dated December 3, 1982.

A reading of § 105 of the Bankruptcy Reform Act (11 U.S.C. § 105) reveals this to be inaccurate. That section provides, *inter alia,* as follows:

"(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

As previously noted, there is a difference between "bankruptcy court" and "courts of bankruptcy." The "courts of bankruptcy" are those courts referred to in § 404(a) of the Bankruptcy Reform Act (11 U.S.C. § 404(a)). Nothing in § 105 refers to "courts of bankruptcy" or the district courts. That rule was intended to permit the bankruptcy courts, not the district courts, to issue orders, process or judgments necessary to administer the provisions of the Code. It constitutes no authority for the referral order herein.

Secondly, authority for the referral order is said to be found in Rule 927 of the Rules of Bankruptcy Procedure. This district, in promulgating General Procedure Order 1983–1, did not cite BRP 927 for its authority. Nonetheless, the Bankruptcy Rules of Procedure must be reckoned with. While that Rule, at least, refers to district courts, it provides that district courts have the power to "make and amend rules governing practice and procedure under the Act not inconsistent with these rules." Further, "in all cases not provided for by rule, the district court may regulate its practice in any manner not inconsistent with these rules."

The inconsistencies are few, but nonetheless, significant. Importantly, for instance, BRP 115(b) provides for jury trials in bankruptcy matters, and sets forth when such demand shall be made. Additionally, BRP 409(c) provides for jury trials in questions of dischargeability. This is a bankruptcy matter, having no genesis in state law. These rules of bankruptcy procedure continue to be applicable to the Code to the extent that they are not inconsistent with that Code. § 405(d), Bankruptcy Reform Act of 1978.

Additionally, interim rules supplementing the Federal Rules of Bankruptcy Procedure, have been suggested by the Rules Committee of the Judicial Conference of the United States pursuant to the additional rule-making power conferred by § 410 of the Bankruptcy Reform Act of 1978. These rules were in the form of suggested rules, rather than being promulgated by the Supreme Court, for the sake of expediency since time was of the essence. Section 410 provides for the issuance of such additional rules of procedure as may be necessary during the transition period, so long as such rules are "consistent with acts of Congress, ..." § 410 Bankruptcy Reform Act of 1978. 28 U.S.C. § 2075 then provides:

"The Supreme Court shall have the power to prescribe by general rules, ... the practice and procedure in cases under Title 11.

"Such rules shall not abridge, enlarge, or modify any substantive right."

Interim Rule 7004(g) sets forth that "... a party entitled to trial by jury shall be accorded it, ..." Interim Rule 9001 is a rule dealing specifically with the right to jury trials, stating that "any party may demand a trial by jury of any issue triable of right by a jury..." These are rules to be applied in the bankruptcy courts, not just in the district courts or the district courts sitting as "courts of bankruptcy."

Section 1480 of 28 U.S.C. provides that nothing in the newly enacted Chapter 90 and Title 11 are to affect any right to trial by jury, "in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, ..." § 1480 is one of the twelve sections contained within § 241(a), Bankruptcy Reform Act of 1978. I have previously stated that my interpretation of *Northern Pipeline Co.,* *supra,* indicates that the decision was intended to be applicable only to § 1471, contained within § 241(a) of the Bankruptcy Reform Act of 1978.

It is also noted that in § 405(a) of the Bankruptcy Reform Act of 1978, all cases commenced under Title 11 of the Code during the transition period are to be referred to bankruptcy judges who may exercise such jurisdiction and powers as are conferred on the courts of bankruptcy except—

"(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judges actual presence; or

(ii) warranting a punishment of imprisonment; or

(C) an appeal from a judgment, order, decree, or decision of a United States Bankruptcy Judge."

General Procedure Order 1983–1, modeled after the proposed model rule, adds jury trials as a fourth referred matter which

bankruptcy judges shall not be empowered to conduct. The contempt provision is also inconsistent with § 405(a).

Thus, the model rule and General Procedure Order 1983–1 are inconsistent with two sections of the Code, two Interim Rules, and at least two Bankruptcy Rules of Procedure. These inconsistencies attempt to limit the jurisdiction of the bankruptcy court over jury matters, while expanding jurisdiction over state law matters, already specifically found to be improper by the Supreme Court in *Northern Pipeline Co.,* *supra.* Nothing in the plurality's decision in any way limited the bankruptcy courts' authority to conduct jury trials. It did indicate its disapproval of the bankruptcy courts' authority over matters arising under state law.

It should also be noted that BRP 927 allows the district courts to make rules governing *practice and procedure.* It does not appear to provide the mechanism to create jurisdiction in another court, even with the final judgment to be signed by the district judge, through the district courts' rule-making authority. That is what the referral order appears to do. It purports to confer powers to "perform all acts and duties necessary for the handling of referred matters" except certain enumerated proceedings, which enumerated proceedings conflict with § 405(a)(1) of the Code.

§ 404 of the Bankruptcy Reform Act is also suggested by the Administrative Office as authority for the order of referral. It was also incorporated by this district in General Procedure Order 1983–1. This section applies to "courts of bankruptcy", defines them and sets forth transition procedures governing their existence. It is a provision to make it clear that the same courts as were known as "courts of bankruptcy" under the Bankruptcy Act would continue to function, during the transition period, under the Code. It is not a jurisdictional section.

§ 405 of the Bankruptcy Reform Act, cited by both the Administrative Office and in General Procedure Order 1983–1, appears to be partially apposite. That section spe-

cifically indicates that: "[A]ll cases commenced under Title 11 of the United States Code during the transition period shall be referred to the United States bankruptcy judges. The United States bankruptcy judges may exercise in such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by § 404(a) of this Act, ..."

However, it does not state that such matters are to be "referred" by the district courts or by the courts of bankruptcy. It does not state who is to refer such matters or how they are to be referred. Indeed, the filing of bankruptcy cases is directly with the Clerk of the Bankruptcy Court. § 246(a) and § 404, P.L. 95–598 (Bankruptcy Reform Act of 1978). Presumably, however, if it is correct that district courts have jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11, such courts may refer *bankruptcy matters* to the bankruptcy courts in aid of the district courts' own jurisdiction and in the implementation of § 405 of the Bankruptcy Reform Act. This section did not include claims under state law. It only refers to the referral of all cases "commenced under title 11" of the Bankruptcy Code. Further, any attempt to broaden jurisdiction of bankruptcy courts beyond those commenced under title 11 is subject to review by the Supreme Court. It has reviewed that jurisdiction and found it to be unconstitutional.

§ 405(d) also directs that 28 U.S.C. § 2075 shall be applicable. That statute does not seem to permit rules abridging, enlarging or modifying a substantive right. Thus, it is my conclusion that the district court does have jurisdiction over the matters at hand, but that the referral order can only refer so much of the within action to this court as relates to the case "commenced under title 11"—the bankruptcy matters. Claims arising under state law do not appear to be capable of referral under this authority.

F.R.C.P. 83 is also cited as authority for the model referral order and for General Procedure Order 1983–1. This rule grants the district court authority to make rules "governing its practice not inconsistent with these rules." 28 U.S.C. § 2071 likewise states that the Supreme Court and all courts established by Act of Congress may prescribe rules for the conduct of their business. "Such rules shall be consistent with the Acts of Congress and Rules of Practice and Procedure prescribed by the Supreme Court." 28 U.S.C. § 2071.

As previously indicated, the general order of referral is, in some respects, inconsistent with the Code, with other Rules promulgated by the Supreme Court and attempts to refer matters over which the U.S. Supreme Court has said bankruptcy courts have no jurisdiction. None of this has been with the blessing of Congress.

Finally, Rule 53 of the Federal Rules of Civil Procedure and Rule 513 of the Bankruptcy Rules of Procedure are suggested as authority for the referral of cases under title 11 and all civil proceedings arising under, in, or related to cases under title 11 to the extent and in the manner set forth in General Procedure Order 1983–1.

A reading of both of these rules seems to indicate that neither constitutes authority for this referral order.

F.R.C.P. 53 allows reference to a master. The definition of a master contained therein does not apply to bankruptcy courts. The salary of bankruptcy judges is not fixed by the district court, and such compensation is not charged upon the parties or paid out of the fund or subject matter of the action. Further, reference under this rule is to be the *exception*, not the rule. F.R.C.P. 53(b). General Procedure Order 1983–1 refers to the bankruptcy court all bankruptcy matters and almost anything else that might touch upon them, except as previously indicated herein.

Likewise, BRP 513 contemplates reference to a "special master", applying the F.R.C.P. applicable to masters. A comment to BRP 513 notes that it is "superseded by the Code." It has no greater effect, if any, than F.R.C.P. 53.

This lengthy analysis, hopefully, helps to explain the ruling that this Court possesses no authority to proceed further in this action under the circumstances and the facts presented herein. It is not intended to define what constitutes a proceeding "arising under" or "arising in, or related to cases under title 11" beyond these facts. It leaves for future determination what constitutes a claim arising "entirely under state law." It does not discuss the extent to which, if at all, jurisdiction may now be conferred by consent. Unfortunately, a myriad of questions remain.

However, in the matter at hand, without jurisdiction over the subject matter, I know of no authority allowing me to remand to the arbitration panel or to enter orders on the motions now before this Court. In my judgment, the only authority retained in the matter is that properly referred to this court by the district court, and the only reference that is proper is the bankruptcy action, itself.

Pursuant to paragraph 3.e. of General Procedure Order 1983–1 (a provision dealing with practice and procedure), I can and do certify to the district court that circumstances require that an order be entered by a district judge. This opinion involves the validity of an order promulgated by the district court. As such, it should be the subject of a final determination by that court, rather than the bankruptcy court. The district court may or may not agree with the reasoning expressed herein. Thus, it is forwarded for review and entry of an order, with the suggestion that this court has no further jurisdiction over the issues presented in this adversary proceeding and that the same should be dismissed, with the parties free to proceed in a court of competent jurisdiction of their choice.