James R. WARREN, Trustee in Bankruptcy, Plaintiff,

v.

MIAMI VALLEY PRODUCTION CREDIT ASSOCIATION, Defendant.

In the Matter of David Albert SHEEHAN, dba Sheehan Farms, Robyn Lorene Sheehan, f.k.a. Robyn Lorene Welles, Debtors.

Adv. No. 3–81–0832.
Bankruptcy No. 3–81–00072.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 5, 1983.

James R. Warren, Springfield, Ohio, trustee/plaintiff.

Barry Reich, Springfield, Ohio, for defendant.

Paul D. Malina, Springfield, Ohio, for debtors.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter was submitted for decision prior to the expiration of the Supreme Court stay of the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 and the resulting jurisdictional morass confronting the Bench and Bar.

A motion to dismiss filed by Plaintiff on the grounds of "the doctrines of *res judicata* and/or collateral estoppel" was dismissed by this Court on 23 February 1982, 17 B.R. 814, reserving decision on the validity of Plaintiff's claimed security interest in the items of property sold at public auction on 12 June 1981, primarily on the fact that the Trustee in Bankruptcy was not a party to the pre-Chapter 7 litigation and the issues raised herein were never litigated.

On January 10, 1983, the following order was entered *sua sponte:*

This matter is an action by the Trustee for turnover of proceeds from the sale of property alleged to be property of the estate. The controversy involves a question of proper perfection of a security interest under state law. The matter was submitted prior to expiration of the United States Supreme Court's stay of its opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), (hereinafter *Northern Pipeline* ), and is presently pending for final judgment.

The proceeding is now before the Court *sua sponte* as required by law for review of this Court's jurisdiction in light of the *Northern Pipeline* decision. As elaborated in this Court's opinion in *The Schear Realty and Investment Co., Inc.,* 25 B.R. 463 (Bkrtcy., 1982), the Court's jurisdiction over this type of litigation is uncertain.

To avoid undue prejudice to the litigants by further delay, the Court hereby advises the litigants that, subject to further order of the Court, no decision will be rendered in this case until Congress enacts remedial legislation as necessitated by the *Northern Pipeline* decision. The Court, however, will proceed to decision if the parties either, to the extent permitted by the Constitution, waive, by stipulation, all jurisdictional questions under *Northern Pipeline* or the *Order of the Court of Appeals for the Sixth Circuit* and the *Order of the District Court of the Southern District of Ohio* pursuant thereto, or move to dismiss on the basis of a lack of jurisdiction for a determination by the Bankruptcy Court.

On January 18, 1983, the following consent and agreement was filed in behalf of the litigants:

Now comes Plaintiff and Defendant, by their attorneys, and waive all jurisdictional questions under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* and the order of the Court of Appeals for the Sixth Circuit and the order of the District Court of the Southern District of Ohio pursuant thereto, to the extent permitted by the United States Constitution. The parties hereby request the Court to proceed to a decision of the questions raised in this adversary proceedings.

Conformably to the opinions by this Court in *Winters National Bank & Trust Company of Dayton v. The Schear Realty & Investment Co., Inc. et al.,* 25 B.R. 463, 9 B.C.D. 1210, B.L.D. ¶ 68949 (Bkrtcy.1983) and *In the Matter of Johnson,* 26 B.R. 530, (Bkrtcy.1983) a decision will be entered pursuant to the Supreme Court Rules of Bankruptcy Procedure as promulgated on April 24, 1973, effective October 1, 1973.

### FINDINGS OF FACT

David Albert Sheehan and Robyn Lorene Sheehan, dba Sheehan Farms, instituted a case under Chapter 11 on January 13, 1981.

On February 2, 1981, an adversarial proceeding was filed by Miami Valley Production Credit Association (MVPCA) against Debtors seeking relief pursuant to 11 U.S.C. § 362(d), terminating the stay to permit continuation of a pending foreclosure action in state court to collect an indebtedness in an amount in excess of $460,000.00. The security interest asserted covered the major part of the business assets, both real and personal.

The hearing on the pleadings in that adversarial proceeding was assigned on the docket for February 26, 1981. On March 13, however, Debtors filed a motion to convert to a Chapter 7 administration. Thereafter, MVPCA (Defendant herein) took a default judgment removing the automatic stay "in all respects as between Plaintiff and Defendants," entered March 26, 1981.

On May 6, 1981 an order was entered converting the Chapter 11 case to one under Chapter 7; and on May 18, James R. Warren was appointed Trustee in Bankruptcy.

On June 12, 1981, MVPCA caused all of the assets of Debtors to be sold.

On December 4, 1981, the Trustee filed a complaint against MVPCA seeking a judgment for the turnover of a portion of the proceeds realized from the sale of certain specific farm chattels, in the amount of $11,005.00.

In November 1975 the Debtors had initiated a credit relationship and executed a promissory note and mortgage on real estate and security agreements to Defendant on all farm implements and equipment. The security interest was to attach to existing equipment and to after-acquired property, as follows:

> All property similar to that listed above, which at any time may hereafter be acquired by the Debtor(s) including, but not limited to, all off-spring of livestock, additions and replacements of livestock and poultry, and replacements and additions to equipment and other personal property above described; and all products of crops, livestock and poultry, and all feed to be used in fattening or maintaining said livestock and poultry.

The items of property now claimed by the Trustee were purchased by Debtors subsequent to the execution of the security agreement (and continuation statement of 6 November 1980). On or about 4 January 1980 Debtor signed a revised "inventory." He testified that representatives of MVPCA came to the farm and reported they were there "just taking inventory" preparatory to a sale and he merely signed their form. He never understood that MVPCA claimed a security interest on items they had not furnished funds to purchase.

There is no doubt that MVPCA did not provide the funds to purchase the five chattels at issue.

## DECISION

Even though the testimony and documentary evidence is extensive, the basic legal issue is not complicated. The parties contest whether or not there was a security interest in after-acquired property sold at the public auction conducted on behalf of Plaintiff.

The Trustee contends that the after-acquired property clause in the security agreement did not attach under Ohio Revised Code § 1309.15(A) (UCC 9–204) and the definition of "agreement" in § 1301.-01(C) (UCC 1–201), as in effect in November, 1975. He urges that,

> "It is respectfully submitted that the Defendant can have no security interest in the property in question until there was agreement as defined in § 1301.01(C), which requires the bargain of the parties 'in fact' as found in their language or by implication from other circumstances including course of dealing, etc,

It seems clear that the legislature contemplated more than a mere signed writing placed before a borrower with the admonition that he signed the paper. The words 'agreement', 'bargain' and 'in fact' require some sort of mutual assent or meeting of the minds. Considering this legislative language it would seem passing strange that a professional

lender would use a security agreement with bold, prominent print describing property to which the security agreement applies and make no mention of after-acquired property in the prominently displayed section, but incorporate the after-acquired property in small inconspicuous print in a place apart from where you would expect to see the itemization of the property upon which the security interest was to apply. Under these circumstances it is customary to construe the instrument against the party drafting the same."

He further urges that there must be "a blending of 1) agreement that lien attached, 2) value is given, 3) Debtor has rights in the collateral, a situation which never occurred...."

The Trustee correctly rationalizes the basic requirement for perfection under the Uniform Commercial Code. However, the question presented is the application of these principles upon purchase of new equipment, if an after-acquired property clause is in the security agreement. The requirement for repeated perfection as set forth in pre-Code chattel mortgage cases was changed by the Code. In other words, no new action is necessary after the property is acquired, except as to crops and consumer goods. Decisions under the Commercial Code (UCC 9–204(3), (4)) have supported this change, even though no new value is given at the time of the property acquisition (except for the protection of purchase money security interests). See the leading case of *National Cash Register Co. v. Firestone & Co.*, 346 Mass. 255, 191 N.E.2d 471.

Ohio Revised Code § 1301.11(C) (UCC 1–201) which in defining "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance ..." does not signify an exception to the statute of frauds provisions in Ohio Revised Code § 1309.14 (UCC 9–203) and the rule that the express terms of the agreement will control both the course

of dealing and the usages of trade. The oral testimony by Debtor cannot vary the plain and unambiguous terms of the written contract. The Trustee does not assert a claim in fraud or other exception to the parole evidence rule, which is substantive law as well as a rule of evidence and is not waived by failure timely to object, *Burton v. Durkee*, 158 Ohio St. 313, 49 Ohio Op. 174, 109 N.E.2d 265. Note Ohio Revised Code § 1301.11(D) (UCC 1–205).

It must be concluded, therefore, that the Trustee's complaint seeking a turnover of the proceeds of sale for the items of equipment purchased after the execution of the security agreement (although from funds not supplied by the Defendant) must be denied.